CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED

APR 20 2016

JULIA C. DUDLEY, CLERK
BY: [signature]
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **Criminal Action No. 7:13CR00045** |
| | ) | **(Civil Action No. 7:15CV80823)** |
| **v.** | ) | |
| | ) | **MEMORANDUM OPINION** |
| **ALLEN ROY OSBORNE,** | ) | |
| | ) | **By: Hon. Glen E. Conrad** |
| **Defendant.** | ) | **Chief United States District Judge** |

Allen Roy Osborne, a federal inmate proceeding pro se, has moved to vacate, set aside, or correct his sentence, under 28 U.S.C. § 2255. The government has filed a motion to dismiss, and Osborne has responded, making this matter ripe for consideration. Upon review of the record, the court concludes that the government's motion to dismiss must be granted and Osborne's § 2255 motion dismissed.

**I.**

On June 20, 2013, a grand jury of this court charged Osborne in a one-count indictment with conspiracy to possess with intent to distribute more than 500 grams of a substance containing methamphetamine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A). This crime carries a mandatory minimum sentence of 120 months to life in prison. 21 U.S.C. § 841(b)(1)(A). Osborne obtained counsel and negotiated a written plea agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, in which he agreed to plead guilty to the indictment for an agreed-upon sentence of 120 months' imprisonment.

At the guilty plea hearing, Osborne affirmed that he had had an adequate opportunity to read and discuss the plea agreement with counsel, that he understood the plea agreement, and that no one had forced him or made any promises to cause him to plead guilty. (Plea Hr'g Tr. at 9-10, ECF No. 114.) Osborne further affirmed that he was "fully satisfied with the counsel, representation, [and] advice given to [him] in this case by [his] attorneys." (Id. at 9.) Osborne

affirmed that he understood the elements of the offense for which he was charged, and the evidence the government would have to show in order for a jury to find him guilty. (Id. at 12.) Osborne stated that he understood that the maximum possible penalty for distribution of more than 500 grams of a substance containing methamphetamine was ten years to life in prison. (Id.) The court further explained that because the plea agreement was negotiated pursuant to Rule 11(c)(1)(C), acceptance of the plea would require a sentence of ten years in prison as agreed upon by both parties. (Id. at 13.) Osborne affirmed that he understood that he would be sentenced to ten years. (Id.) Osborne also stated that he understood that he was waiving his right to collaterally attack his plea and sentence, other than that allowed by law and claims of ineffective assistance of counsel. (Id. at 18.)

A former officer with the Franklin County Sheriff's Office provided a summary of the evidence against Osborne. He estimated that during the course of the conspiracy, more than 14 kilograms of methamphetamine had been bought and sold. (Id. at 22.) He also noted that Osborne had a safe located in his bedroom at his home, where he stored money, drugs, and weapons. (Id. at 24.) He testified that Osborne had a home security system that allowed him to see who was outside his home when he was in his bedroom. (Id. at 23.) He also testified that he helped conduct a search warrant on Osborne's house and found packages of cash in the safe. (Id. at 25.) Over twenty firearms were also confiscated from Osborne's home. (PSR at ¶ 20, ECF No. 99.)

Osborne stated that he did not disagree with the summary of evidence presented against him. (Id. at 26.) The court asked, "[H]ow do you plead to Count One of the indictment against you, guilty or not guilty?" (Id. at 28.) Osborne responded, "Guilty." (Id.)

The court then found that Osborne was "fully competent and capable of entering an informed plea" and that his plea of guilty was knowing and voluntary and supported by an

independent basis in fact. (Id. at 29.) Nonetheless, the court held acceptance of the plea under advisement until the sentencing hearing. (Id. at 48.)

At the sentencing hearing on April 15, 2014, the court accepted Osborne's guilty plea. (Sent. Tr. at 5, ECF No. 113.) The defense stated that he had no objections to the presentence investigation report ("PSR"). The PSR proposed a total offense level of 39, a criminal history category of I, and a guideline range of 262 to 327 months' incarceration. (Id. at 2.) The PSR provided for a two-level enhancement to Osborne's base offense level for possession of a firearm during the offense and another two-level enhancement for being an organizer or leader of the conspiracy. (PSR ¶ 27, 29, ECF No. 99.) The court sentenced Osborne to 120 months' imprisonment in accordance with the terms of the plea agreement. (Id. at 2, 6.) Osborne did not appeal.[1]

In his § 2255 motion, Osborne argues that counsel provided ineffective assistance by failing (1) to inform him and the court that he was eligible for a lesser sentence under the safety valve provision of U.S.S.G. § 5C1.2(5) and consequently to object to the government's characterization of him as a leader in the conspiracy and to the weapons enhancement; and (2) to object to the weight of the drugs involved in the conspiracy.

**II.**

To state a viable claim for relief under § 2255, a defendant must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States;" (2) that "the court was without jurisdiction to impose such a sentence;" or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Osborne bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. Jacobs v. United States, 350 F.2d 571, 574 (4th Cir. 1965).

[1] Osborne filed a direct appeal on April 30, 2014, but voluntarily withdrew it.



Case 7:13-cr-00045-GEC Document 126 Filed 04/20/16 Page 3 of 7 Pageid#: 562

The proper vehicle for a defendant to raise an ineffective assistance of counsel claim is often by filing a § 2255 motion. United States v. Baptiste, 596 F.3d 214, 216 n.1 (4th Cir. 2010). However, in order to establish a viable claim of ineffective assistance of counsel, a defendant must satisfy a two-prong analysis showing both that counsel's performance fell below an objective standard of reasonableness and that the defendant was prejudiced by counsel's alleged deficient performance. Strickland v. Washington, 466 U.S. 668, 687 (1984). When considering the reasonableness prong of Strickland, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; Gray v. Branker, 529 F.3d 220, 228-29 (4th Cir. 2008). Counsel's performance is judged "on the facts of the particular case," and assessed "from counsel's perspective at the time." Strickland, 466 U.S. at 689, 690.

To satisfy the prejudice prong of Stickland, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. Id. at 694. Prejudice exists when counsel's error results in a sentence longer than that which the court would otherwise impose. See Glover v. United States, 531 U.S. 198, 202-04 (2001); United States v. Smith, 497 F. App'x 269, 272 (4th Cir. 2012).

**1. Safety Valve Argument**

Osborne argues that his counsel provided deficient performance by failing to argue that he should receive a reduced sentence under the safety valve provisions of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2(5). The safety valve permits a first time offender who would otherwise face a mandatory minimum sentence to receive a shorter sentence, provided that he meets five statutory requirements. See 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2(5). Two of those requirements are: (1) that the defendant must not have possessed a firearm in connection with the

offense, 18 U.S.C. § 3553(f)(2); and (2) that the defendant must not have been an organizer or leader in the offense, 18 U.S.C. § 3553(f)(4).

Osborne claims that his counsel should have objected to the two enhancements in his PSR for possessing a weapon in connection with the drug conspiracy and being a leader and organizer, because if his counsel had successfully objected to those enhancements, he would have been eligible for safety valve relief. A defendant bears the burden of proving that he meets all five criteria of the safety valve provisions. United States v. Aidoo, 670 F.3d 600, 605 (4th Cir. 2012). Osborne's argument suffers from a fatal flaw. He did not object to the recitation of evidence against him during his plea colloquy. The evidence presented at the plea colloquy established that Osborne stored drugs, guns and money in his house where he bought and sold drugs. (Plea Hr'g Tr. at 22, ECF No. 114.) The Fourth Circuit has concluded that when a defendant keeps a firearm and drugs in his home from which he conducts drug transactions and relies on a surveillance system to protect his business dealings, a finding that the defendant "possessed" a firearm in furtherance of a drug trafficking crime is appropriate. United States v. Perry, 560 F.3d 246, 255 (4th Cir. 2009); see also United States v. Fernandez, 526 F. App'x 270, 283 (4th Cir. 2013) (noting that because the defendant hid a firearm a few feet from the drugs and drug dealers often "carry weapons to protect themselves," the evidence supported a finding that the defendant possessed a firearm in furtherance of a drug trafficking offense). Accordingly, the evidence that Osborne stored drugs and guns in close proximity supports a finding that the firearm enhancement applied to him. Id.

Osborne cannot now disaffirm his statement made during his plea colloquy that the summary of the evidence against him was accurate. See Beck v. Angelone, 261 F.3d 377, 396 (4th Cir. 2001) (noting that, absent clear and convincing evidence to the contrary, petitioner was bound by his representations at the guilty plea colloquy). Osborne, by his own admission, was

not eligible for safety valve relief because he failed to meet the statutory requirement that he not possess a firearm in connection with the offense. Accordingly, counsel's decision not to object to the firearm sentencing enhancement and not to argue that Osborne should receive a sentence under the safety valve provision of U.S.S.G. § 5C1.2(5), did not constitute deficient performance.[2] Strickland, 466 U.S. at 687.

**2. Drug Quantity**

Next, Osborne argues that his counsel provided ineffective assistance by failing to object to the drug quantity involved in the conspiracy. He asserts that the evidence showed that he was responsible for selling only four ounces of methamphetamine per week for a period of three months, not three years as the PSR alleged. He claims that this discrepancy resulted in the PSR erroneously attributing to him an additional thirty-two pounds of methamphetamine. This argument, too, lacks merit.

First, the nature of a conspiracy is such that a defendant may be held accountable for all drugs attributable to all members of the conspiracy. See United States v. Randall, 171 F.3d 195, 210 (4th Cir. 1999) (noting that "the district court may attribute to the defendant the total amount of drugs involved in the conspiracy, provided the drug quantities were reasonably foreseeable to the defendant and are within the scope of the conspiratorial agreement"); United States v. Sesere, 413 F. App'x 653, 659 (4th Cir. 2011). Accordingly, as long as the drug quantities were foreseeable to Osborne, he can be held accountable not just for the drugs that he sold, but for those drugs sold by other members of the conspiracy. As a result, his focus on the amount of drugs that he, alone, sold is misplaced.

[2] The court need not address the fact that counsel also did not object to the enhancement in Osborne's PSR for being a leader or organizer of the offense. Osborne clearly was not eligible for safety valve relief because he did not satisfy the statutory firearm prohibition requirement. Accordingly, further review is unnecessary. United States v. Ortiz, 136 F.3d 882, 884 (2d Cir. 1997) (noting that because the defendant did not satisfy one of the safety valve requirements it need not reach the question of whether he met any of the other four additional requirements).

Osborne's argument fails for another reason. At the plea colloquy, he agreed that more than 14 kilograms of methamphetamine had been sold during the course of the conspiracy. (Plea Hr'g Tr. at 22, ECF No. 114.) Osborne's current claim that he was responsible for buying and selling much less, directly contradicts his affirmation under oath during the Rule 11 colloquy that the conspiracy involved more than 14 kilograms of methamphetamine. Because Osborne's current bald assertions regarding drug weight directly contradict the summary of evidence presented against him, to which Osborne agreed, his argument must fail. See United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (holding that absent extraordinary circumstances, "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false").

For the foregoing reasons, Osborne cannot establish either ineffective assistance or prejudice based on counsel's failure to object to the drug weight recommended in the presentence report. Strickland, 466 U.S. at 687.

## III.

For the reasons stated herein, the court will grant the government's motion to dismiss. An appropriate order will be entered this day.

**ENTER:** This 20th day of April, 2016.

[signature]

Chief United States District Judge